Filing # 149340505 E-Filed 05/10/2022 11:31:18 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

LANDFALL 2, INC., a Florida corporation

        Plaintiff,

VS.

DATASCORE-AI, LLC, a Texas limited
liability company; BRENT BIGGS,
individually, DATASCORE
ENTERPRISES, INC., a Delaware
corporation; ERIC KORTMAN,
individually, and BLUE JACKET MEDIA,
INC. a Florida corporation,

        Defendants.

_____/

CIRCUIT CIVIL DIVISION

CASE NO.:

## VERIFIED COMPLAINT

Plaintiff, LANDFALL 2, INC., by and through undersigned counsel, hereby sues

Defendants, DATASCORE-AI, LLC, a Texas limited liability company; BRENT BIGGS,

individually, DATASCORE ENTERPRISES, INC., a Delaware corporation; ERIC KORTMAN,

individually, and BLUE JACKET MEDIA, INC. a Florida corporation, and states as follows:

## INTRODUCTION

This is an action to enforce an oral partnership agreement, breach of fiduciary duty; tortious

interference, declaratory relief, and other equitable relief associated with then reliance upon

promises delivered from a place of trust and confidence. Plaintiff and Defendant collaborated on

an initial pilot program for groundbreaking software. After the software proved successful, the

defendant approached plaintiff about forming a partnership. Due to prior history establishing trust

and confidence, the parties failed to reduce the partnership agreement to writing. Both parties

developed the product, but occupied different division within the company. Once it became clear

the product could be worth billions, things changed. Defendant, who has a history of such

1

behavior, destroyed partnership evidence and evidence of joint development. Defendant, who ran the software side of the business, blocked access to Plaintiff and partnership customers. Defendant then demanded renegotiation because the deal was not "papered up" according to its employee. Defendants then sought to "poach" business relationships rightfully belonging to the Partnership and continue to this day. Plaintiff, the Partnership, and large corporate customers have been harmed by Defendants' actions. This harm is ongoing.

1.      This action is within the jurisdictional limits of this Court as the amount in controversy exceeds $30,000.00.

2.      Venue is appropriate as Palm Beach County is where the causes of action arose, where the parties conducted the business of the Partnership, and where the .

## PARTIES

a.      **LANDFALL 2, INC.**

3.      Plaintiff LANDFALL 2, INC. ("**Landfall**") is a for-profit corporation organized and existing under the laws of the State of Florida, and having an office for the transaction of customary business in Palm Beach County, Florida.

4.      At all times relevant, Landfall operated under the fictitious name of Landfall Data in compliance with applicable Florida law.

5.      Kevin Brody ("**Kevin**") was, at all times relevant, the Chief Executive Officer of Landfall.

6.      At all times relevant, Mr. Brody acted as an agent for Landfall, with full authority to bind the company.

7.      Jason Fine ("**Jason**") was at all times relevant a management level employee of Landfall.

8.      At all times relevant where Mr. Fine acted as an agent for Landfall, Mr. Fine possessed full authority to bind the company.

b.   DATASCORE-AI, LLC AND RELATED ENTITIES

9.   Defendant, **DATASCORE-AI, LLC** ("**Datascore**") is a foreign corporation that is not lawfully transacting and this court has jurisdiction over the Defendant Datascore in that Datascore conducted business relevant to the Partnership, received mail, and occupied offices in Palm Beach County, the Defendant is subject to service of process issued by this court.

10.   Datascore is a limited liability company formed in the state of Texas on October 5, 2020.

11.   At all times relevant, Datascore's company website has been www.datascore.ai.

12.   Datascore is a manager-managed LLC.

13.   The Manager of Datascore is the **Private Equity Stage Investors Trust**.

14.   The trustee of the Private Equity Stage Investors Trust is **5 Beehive, Inc**.

15.   5 Beehive, Inc. is a corporation formed under laws of the state of Texas on February 7, 2022.

16.   The named Director of 5 Beehive, Inc. is **trustee of the Private Equity Stage Investors Trust**.[1]

17.   The organizer of 5 Beehive, Inc. is Brent Biggs, a Defendant in this action.

*(i)*   *Blue Jacket Media, Inc.*

18.   Defendant, Blue Jacket Media, Inc. ("**Blue Jacket Media**") is a for-profit corporation organized and existing under the laws of the State of Florida, having an office for the transaction of customary business in Seminole County, Florida.

19.   Defendant, Eric Kortman, was, at all times relevant, the President of Blue Jacket Media.

---

[1] See Certificate of Formation, attached as **Exhibit A**.

**c.      PERSONS CONNECTED TO DATASCORE**

*(i)      Brent Biggs*

20.      Defendant BRENT BIGGS ("**Brent**") is not a resident of the State of Florida and this court has jurisdiction over the person of the Defendant in that Brent conducted business relevant to this action in Palm Beach County Florida, the Defendant is subject to service of process issued by this court.

21.      At all times relevant, Brent was the Chief Executive Officer of and acted as an agent for Datascore, with full authority to bind the company.

*(ii)      Kevin P. Young*

22.      Kevin P. Young ("**Kevin Young**") is a Washington resident who works for Datascore in an unknown capacity.

23.      Mr. Young uses the Datascore-owned e-mail address kevin@datascore.ai to send and receive communications and has done so since at least September 16, 2021.

24.      Mr. Young also works for UBS Financial Services, Inc. in Seattle Washington, where he holds the position of a Senior Vice President-Wealth Management.

25.      Mr. Young holds at least one license related to his work as a financial advisor.

26.      Mr. Young has been Brent's financial advisor for more than a decade.

*(iii)      Steve Mauri*

27.      Steve Mauri ("**Steve**") is a Washington resident who works for Datascore in an unknown capacity.

28.      Steve was referred to Datascore's Chief Executive Officer by Mr. Young.

29.      Steve uses the Datascore-owned e-mail address steve@datascore.ai to send and receive communications and has done so since at least March 24, 2022.

    *(iv)*    **Eric Kortman**

30.    Defendant ERIC KORTMAN ("**Mr. Kortman**"), is a resident of Seminole county, is over the age of eighteen, and is otherwise *sui juris*.

31.    Mr. Kortman worked for Datascore on and when Datascore partnered with Landfall in Florida.

32.    Mr. Kortman used the Datascore-owned e-mail address <u>erick@datascore.ai</u> to send and receive communications and did so since at least May 19, 2021.

33.    On January 22, 2022, Brent took away Mr. Kortman's share of equity in Datascore after Mr. Kortman resigned due to health issues.

34.    Notwithstanding, Datascore and Brent still used the mailing address for Blue Jacket Media as its mailing address for invoices.

    **d.**    **DATASCORE ENTERPRISES, INC.**

35.    Defendant, DATASCORE ENTERPRISES, INC ("**DS Enterprises**") is a foreign corporation that is not lawfully transacting business in Florida and this court has jurisdiction over the Defendant DS Enterprises in that a DS Enterprises accounts received monies from the Landfall/Datascore Partnership, received mail, and occupied offices in Palm Beach County, the Defendant is subject to service of process issued by this court.

36.    DS Enterprises is a corporation formed under laws of the state of Delaware on November 31, 2021.

37.    Brent is also connected to DS Enterprises; on April 26, 2022, at 6:07 p.m. Brent sent an e-mail purporting to terminate any verbal agreement between Landfall and DS Enterprises.[2]

<u>**Statement Regarding Personal Jurisdiction**</u>

38.    This Court has personal jurisdiction over Brent Biggs pursuant to Section

---

[2] See Email dated April 26, 2022, from Brent Biggs, attached hereto as **Exhibit B**.

48.193(1), Florida Statutes, in that Brent Biggs conducts and otherwise engages in business in the State of Florida; Datascore and Brent Biggs used the mailing address for Blue Jacket Media in Florida, Brent and Datascore committed tortious acts against Landfall and the Partnership, who at the time and at all relevant times maintained a principal place business in Palm Beach County in the State of Florida. In addition, Brent Biggs committed tortious acts against Landfall and the Partnership who at the time maintained a principal place of business in Palm Beach County, Florida. Brent Biggs otherwise has sufficient minimum contacts with the state of Florida such that maintenance of this action in Florida does not violate traditional notions of fair play and substantial justice.

39.     This Court has personal jurisdiction over Datascore-ai, LLC pursuant to Section 48.193(1), Florida Statutes, in that Datascore-ai, LLC conducts and otherwise engages in business in the State of Florida; and Datascore used the mailing address for Blue Jacket Media in Florida, Datascore-ai, LLC committed tortious acts against Landfall and the Partnership, who at the time and at all relevant times maintained a principal place of business in Palm Beach County in the State of Florida. In addition, Datascore-ai, LLC committed tortious acts against Landfall and the Partnership who at the time maintained a principal place of business in Palm Beach County, Florida. Datascore-ai, LLC otherwise has sufficient minimum contacts with the state of Florida such that maintenance of this action in Florida does not violate traditional notions of fair play and substantial justice.

40.     This Court has personal jurisdiction over Datascore Enterprises, Inc. pursuant to Section 48.193(1), Florida Statutes, in that Datascore Enterprises, Inc conducts and otherwise engages in business in the State of Florida; Datascore Enterprises, Inc. sent invoices to Landfall, Datascore Enterprises, Inc. committed tortious acts against Landfall and the Partnership, who at the time and at all relevant times maintained a principal place business in Palm Beach County in the State of Florida. In addition, Datascore Enterprises, Inc. committed tortious acts against Landfall and the Partnership who at the time maintained a principal place of business in Palm Beach County, Florida. Datascore Enterprises, Inc. otherwise has sufficient minimum contacts with the state of Florida vis-à-vis its alter ego, Brent Biggs, such that maintenance of this action in Florida does not violate traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

**I.     The Parties meet and begin to their Initial Collaboration Period**

41.     In early 2019, Jason and Brent met after being introduced to each other by a mutual acquaintance.

42.     At the time, Jason worked for Landfall and Brent worked for his prior company, brody.ai.

43.     The pair became friendly, and Jason proceeded to introduce Brent to his colleagues at Landfall, including Kevin.

44.     After getting along well both personally and professionally, Landfall and Brent, through Brent's prior company, brodi.ai., began to do business together.

45.     The two companies worked well together, and the initial small projects were successful.

46.     This pattern of successful collaboration continued over the course of the next several months.

47.     During this time, the people within both Landfall and Brent's prior company came to know and trust each other.

48.     Brent entered a position of trust and confidence with Kevin Brody, Jason Fine, and the team at Landfall

49.     Brent's former company entered a position of trust and confidence with Kevin Brody, Jason Fine, and the team at Landfall.

50.     This goodwill carried over from the old company to Brent's new company, Datascore,-ai, LLC, which was formed in late December of 2020.

51.     During this time, Landfall, Brent, and his prior company were collaborating on a

7

product that all parties believed had massive potential:  the "Software Platform."

## II.    The Parties enter into an agreeement to develop the Software Platform for Market

52.    In December of 2020, Brent, on behalf of the newly formed Datascore-ai, LLC, and Landfall agreed to work together to build and refine the Software Platform and assess its viability (hereinafter, the "**Development Project Agreement**").

53.    The goal of the Development Project Agreement was to assess the market viability of the product after end-user adoption and comment on the Software Platform.

54.    To realize this goal, the Parties agreed to the following terms for the Development Project Agreement related to the Software Platform.

55.    First, Landfall and Datascore would work together to develop the Software Platform, with each party contributing their respective knowledge, skills, and experience.

56.    Second, Datascore would take the lead on work related to any technical, trade, and industry knowledge with respect to developing the Software Platform.

57.    Third, Landfall would develop the Software Platform by providing specifications necessary for the Software Platform's design, performance as well as its compliance with numerous state and federal regulatory regimes, the most important one being the Telephone Consumer Protection Act ("**TCPA**").

58.    Fourth, Landfall would market the Software Platform and use its resources and relationships to find a customer to take part in the pilot program while the Software Platform went through iterative improvements.

59.    Fifth, Landfall would provide customer facing services to the clients who adopted the Software Platform.

60.    Sixth, both Landfall and Datascore would share equally responsibility for the losses incurred from the undertaking.

61.    Seventh, both Landfall and Datascore would share equally profits generated from

the undertaking.

62.     On or about late March of 2021, the Software Program went live and the Development Project commenced.

63.     Both parties fully performed their duties under the Development Project Agreement.

64.     Landfall convinced one of its largest clients to take a chance on the Software Platform.

65.     As expected, the Software Platform underwent a number of tweaks and changes, as did the business processes and operations surrounding the Platform.

66.     In addition, Landfall and Datascore's made improvements on the product in a way that made the Platform viable.  Extremely viable.

## III.     Landfall and Datascore "crack the code"

67.     During the Development Project period, Landfall and Datascore made improvements to their Platform that allowed it to vastly outperform any market competitor.

68.     Simply put, Landfall and Datascore effectively "cracked the code" on services in their business.  Making their Software Platform 10x better than a leading competitor.[3] [4]

## IV.     Landfall and Datascore form the Landfall/Datascore Partnership

69.     On August 19, 2021, Brent expressed his desire for Datascore to enter a partnership with Landfall.[5]

70.     On December 3, 2021, a meeting was held at Landfall's old office, located at 123 NW 13th Street, Suite 300 B, Boca Raton, FL 33432.  The meeting was set for Landfall and

---

[3] *See generally*, slides from, Jason Fine, Landfall Data, Presentation Conform & Outperform – Conquering Connections Post Stir / Shaken, March 29, 2022, attached as **Exhibit C**.

[4] N.B.:  the Presentation is co-branded Landfall/Datascore.

[5] See e-mail from Brent Biggs, subject: Data Partnership, dated August 19, 2021, attached as **Exhibit D**.

Datascore's next steps with respect to the Software Platform.

71.     Kevin Brody, Jason Fine, and Desiree Widstrand attended this meeting for Landfall, while Brent Biggs and Eric Kortman attended for Datascore.

72.     During this meeting, Landfall and Datascore agreed to "roll up" and "flip" the combined entities and assets.

73.     To that end, Landfall and Datascore agreed to each of the following agreements contained in ¶¶ 74 to 82 of this Verified Complaint (each, an "**Agreement**" and collectively, the "**Partnership Agreement**").

74.     **First Agreement**.  Landfall and Datascore agreed to merge the partnership assets into a single corporate entity.  No particular form was decided upon; however, the parties all agreed they would go with the most optimal solution.

75.     **Second Agreement**.  Landfall and Datascore agreed to split partnership profits equally.

76.     **Third Agreement**.  Landfall and Datascore agreed to put all contracts and assets related to the Partnership into name of new entity, once the entity was formed.

77.     **Fourth Agreement**.  Profits from the sale of the business entity would be distributed 50/50 to be further distributed as each side saw fit.

78.     **Fifth Agreement**.  Landfall would continue to provide sales, marketing, and client-facing resources for the new entity

79.     **Sixth Agreement**.  Datascore would be responsible for the data science division, and software development, and would produce code according to specification.

80.     **Seventh Agreement**.  Landfall would be responsible for defining the reporting requirements.

81.     **Eighth Agreement**.  Landfall would provide organization, management, and administrative skills necessary to locate, secure, and maintain a new office headquarters big

enough to accommodate both teams combined

82.     ***Proposal as to Combining Names in Merger.***  The parties considered combining the names as they merged.

83.     The Agreements and any actions arising therefrom formed a partnership between the Parties (the "**Landfall/Datascore Partnership**" or the "**Partnership**").

84.     Throughout their relationship, the parties had various discussions concerning their success in business together and how their mutual trust and work ethic had benefited their company.

85.     Brent, Datascore, and the remaining Defendants were aware of and accepted Landfall's trust and reliance in all matters concerning the Joint Venture.

**V.      Landfall and Datascore successfully implement the Partnership**

86.     After the meeting on December 3, 2021, Landfall and Datascore performed their duties under the Partnership Agreements.

**a.      *Check Telegram***

87.     Many internal conversations between the Partnership Team occurred over Telegram, a text messaging app. However, for reasons discussed, *infra,* those messages are not available.

88.     Brent recommended that all parties use Telegram to warehouse all communications regarding the Partnership.  Telegram quickly became the official communications application for most communications relative to the Partnership, including, but not limited to, discussions regarding technical aspects, blueprints, customer and prospect details, and other product development matters.

89.     Brent continually enforced the use of Telegram in the following manner.  When someone sent a communication to Brent in a non-Telegram app, Brent would write his response to that party in Telegram.

90.     Brent would then respond "Check Telegram" in the original non-Telegram app.

91.     The members of the Landfall/Datascore Telegram channels would refer to the Telegram chats to warehouse and retrieve important documents, communications, client/project information, and other information relevant to the venture.

**b.     *Incorporation***

92.     Next, in furtherance of the Partnership, Jason met with Landfall's accountants to discuss corporate formation options.

93.     On January 24, 2022, Jason, Kevin, and Brent met with Michele Shuster, Esq. at the new office in Florida to discuss the Landfall/Datascore Partnership, the Big Exit, and the Partnership management teams' desire to hire Ms. Shuster to spearhead the compliance team for the new entity.  E-mail communications[6] show that the parties planned to meet with Ms. Shuster.

**c.     *New Office***

94.     On December 15, 2021, Brent visited and spent the day at the new office space acquired by Landfall for the Partnership.

95.     The next day, Brent, Jason Fine, and Landfall employees Jack Agar and Mike Bloom conducted a pitch meeting to market the Partnership's technology to a potential client, **Erus Energy**.

96.     On January 25, 2022, Kevin and other members of Landfall met with Datascore employee Cameron Young to discuss partnership matters.

97.     On January 26, 2022, Brent and other Partnership team members conducted a lunch meeting where they discussed the potential business agreement with a service provider, **Brooks IM**.

98.     Per the recommendation of Brent, Landfall later entered into a large contract with

---

[6] *See* e-mail correspondence chain from Brent Biggs of Datascore, dated December 22, 2021, at 3:22 pm, attached as **Exhibit E**.

Brooks IM for data resources needed to operate the partnership business.

99.     On January 29, 2022, Brent gave a presentation on the Software Platform dashboard the to the Landfall side of the Partnership Team.

### d.     *Datascore's inquiry into valuation*

100.     In conversations with Landfall, Brent stated that UBS believed the Partnership business concern would be worth one billion dollars if the company could show revenues of $10,000,000.00 per month.

101.     Datascore's connection with UBS was common knowledge.  In addition, sometime in October of 2021, Brent informed Jason that UBS purchased a 10% equity stake in Datascore for $500,000.00.

102.     In February of 2022, Landfall, shifted its business focus away from data sales and towards generating income for the Joint Venture.  In complete reliance upon Brent's statement.

## VI.     Actions of Landfll and Datascore showing belief and intent for imminent merger

### a.     *Twilio*

103.     Datascore needs service provider Twilio[7] to successfully run the Software Platform.

104.     Brent requested from Landfall financial information Datascore needed to successfully obtain reduced pricing and favorable billing terms for the Partnership.

105.     The Landfall financial statements included the Partnership Revenue.

106.     Datascore's use of the Landfall financial statments financial information reduced the cost associated the Software Platform's biggest operation expense:  Telecommunications. Specifically:

  a.   *Telephony*:  The telephony rate dropped by by 50% (meaning calls were not

---

[7] Twilio provides underlying technology the Software Platform is built around and telephony routing services used to deliver calls and/or text messages initiated by the Software Platform to end consumers on behalf of Customers.

half-price) and

    b.  *Payment term* – more favorable payment terms provided post pay net 30 billing terms as opposed to the then prepayment billing.  This new terms provided a **huge benefit to Datascore**, who no longer had to prepay for costs out of pocket and add this expense to the partnership accounting.

107.    **Compensation for financials -** Landfall did not receive any compensation from Datascore for providing the financials,  except for the benefits enjoyed by the Landfall/Datascore Partnership.

108.    The new Twilio billing terms created immediate value in terms of increasing margins and improving the cash flow required to operate the venture.

    b.  *CMO of Datascore*

109.    - The Joint Venture commingled members of the respective corporate teams in support of its goals.

110.    During this time period, Jason prepared investor information materials for Datascore at the request of Brent Biggs, for Mr. Kevin Young from Datascore and UBS Financial Services, Inc.

111.    Brent held Jason as the CMO of Datascore to third parties.

112.    Jason accepted this designation, as did informed third parties, who accepted and believed a partnership and merger of Landfall and Datascore was *fait accompli.*

113.    Brent created an email jason@datascore.ai for Jason for use in his capacity as CMO.

114.    Brent requested a copy of Jason's bio to place on the datascore.ai website.

    c.  *Account Liaison Manager*

115.    During this period of time, Desiree Widstrand, at the request of Brent Biggs, served

14

as the Account Liaison Manager for clients that Landfall secured and paid for use of the Software Platform.

116.     Desiree Widstrand email signature included both the Landfall and Datascore corporate logos directly beneath her name and above her connect information.

### d.     *Income and expenses*

117.     As agreed, all profits and expenses pertaining to the Landfall/Datascore Partnership were split equally between Landfall and Datascore.

118.     Landfall, who originated from the contracts related to the Partnership paid all invoices received from Brent, Datascore, or other payees as directed.

119.     Defendants, Blue Jacket Media, Inc, and Brent Biggs are both listed as invoice payees for Twilio invoices to be reimbursed by the Partnership.

### e.     *TCPA Opinion*

120.     On March 10, 2022, outside counsel for Landfall issued opinion regarding TCPA matters.

121.     Brent, on behalf of Datascore, reviewed, commented, and signed off on the opinion.

122.     The language in the legal opinion letter Brent approved describes the involvement of Landfall and Datascore regarding the Software Platform.

123.     Overall, the Landfall/Datascore team experienced rapid growth and success.  When Landfall presented the Platform on behalf of the Partnership at LeadsCon, a leading industry convention, they received rave reviews and generated significant lead flow.

124.     Brent was so thrilled with the response at Leadson, he sent pictures of himself with the Partnership team to Datascore employees directly into the Datascore Slack chat, boasting of how the team was still at the show promoting the Partnership Platform.

### f.     *The Energy Marketing Conferences ("EMC") Tradeshow*

15

125.    Landfall's sales team attracted the attention of the EMC, one of premier tradeshows for energy companies, a target vertical for the Partnership's Software Platform sales.

126.    The tradeshow's owner was so intrigued with the Software Platform that on January 25, 2022, Jack Doueck entered into a referral agreement with Landfall to refer potential customers to the thriving Partnership.

127.    EMC offered to create an executive workshop speaking spot at their upcoming tradeshow in Houston, Texas, offering an opportunity to be a Sponsor, at a reduced rate, and present the Software Solution to all tradeshow attendees.

128.    Pursuantt to the Partnership Agreement Landfall and Datascore split the $5,000 sponsorship fee from the venture profits.

129.    Jason was picked would present the Software Platform solution to the EMC attendees.

130.    On March 29, 2022, At the EMC conference, Jason Fine held an executive workshop on the Software Platform; the tradeshow attendees were blown away by the presentation.

131.    Due to its unique nature, the value of the Software Platform cannot be declared at this time; however, it is safe to assume the potential value of the Software Platform may be in excess of one billion dollars.

## VII.    The Partnership becomes troubled

132.    Everything appeared to be on  and everyone to come together, as Brent was actively looking for a home in Florida.

133.    On March 23, 2022, Brent introduced Steve Mauri as a new addition to Datascore, in charge of accounting and business operations.

134.    In April, Steve produced spreadsheet financials suggested that Datascore should receive eighty percent of the partnership profits, while still splitting equally the expenses.

135.    This financial report created problems for the Landfall/Datascore Partnership

16

business, and beginning on April 18, 2022, Datascore began unilaterally taking erratic action harmful to Landfall, its clients and the Partnership.

### a.    Brent removes access to the Reporting Dashboard

136.    On April 18, 2022, Brent, without warning, cut off the Software Platform's reporting dashboard for Landfall and the Partnership's biggest customer, a customer who generated almost seven hundred thousand dollars ($700,000.00) in partnership revenue from February 28, 2022, through April 14, 2022, alone.

137.    Jason reached out to Datascore's Chief Technology Officer on April 18, 2022, and was informed that Brent instructed him terminate Landfall's access.

138.    On or about  this same time, Brent replied to an SMS text message from the account manager[8] asking about the interruption.  Brent informed the Senior Account Manager at Landfall, that Dashboard Access was shut-off because he was told we were no longer authorized to access their data.  Brent's representations were proven false by the client.

### b.    Datascore's Conduct Prompts Customers to Demand Refunds

139.    Second, Datascore unilaterally decided to not allow any of the seven customers that already paid for Software Platform access and receive services associated with the Software Platform.

140.    Datascore has engaged in this destructive behavior despite having confirmed verbally and in writing to Landfall and these customers the anticipated date   their use of the Software Platform will commence.

141.    As a Result of Datascore's refusal to allow access to Reporting Dashboard and Software Platform, Landfall has already refunded over $200,000 to clients that paid and if issue remains unresolved will be forced to refund the balance.

142.    Datascore's conduct has already caused Landfall and the venture in excess of

---

[8] Andrew Marionakis, Sensior account Manager.

$500,000 in booked revenues and significantly more when considering prospects that are asking to use the Software Platform while Datascore continues to hold hostage the Software Platform.

    **c.**    **Jason Flies to Seattle to Resolve Issues**

143.    Next, on April 19, 2022, Jason flew out to Seattle to resolve the issues between the partners.

144.    It was during this three-day trip, Brent first informed Landfall that Datascore owed a share of its profits to previously unknown equity stakeholder, Kevin Young.

145.    During the trip, the parties agreed that Landfall would wire money that Datascore's accounting department said was owed.

146.    Jason Fine reviewed the account department's calculations and pointed out errors so that Datascore would receive a significantly higher corrected amount.

147.    The parties understood that any monies owed, was based upon Landfall's agreement, at the request of Brent, to not include monies currently due to one particular vendor and instead subtract those expenses from fresh revenue. Without this accommodation, Datascore was not due any money and may potentially have received more than it was entitled to.

148.    By the end of the trip, Jason and Brent had come to terms on agreement to maintain the business plan for six months without change, shook hands, and said their goodbyes.

    **d.**    **Brent Immediately Reverts Back to Conduct Inflicting Damage to the Partnership and Landfall Data's Reputation**

149.    While Jason was on the plane back to Florida, Brent engaged in conduct that devastated the Landfall/Datascore Partnership.

150.    Without notice, Brent deleted all Telegram messages containing critical information to the development and implementation of the Landfall/Datascore partnership. This deletion included:

    a.   Design data on the platform

18

b.  Discussions and plan to place partnership assets and intellectual property into an entity for co-ownership by the partners.

c.  Key information related to current paid customers and prospects

d.  Other information related to the Partnership and strategic direction

151.   To address Kevin's concern about (i) Brent's erratic behavior; (ii) this unexplained data loss from Telegram, and (iii) various Software Platform access issues, Jason e-mailed Brent and asked Brent to confirm in writing that Datascore would not complete against the Partnership.

152.   Brent replied with an expletive-laced tirade and told Landfall to keep the money.[9]

153.   Brent then continued to cut off access to the Software Platform from Landfall and clients Landfall secured for the Partnership.

**e.     Brent improperly communicates with Partnership clients as Landfall works to resolve matter with the Partnership**

154.   Kevin's concerns about Brent's intentions were ultimately validated; Brent had already contacted Erus Energy, a prior existing business relationship or Landfall's that also signed up as a customer for the Partnership Software Platform.

155.   First, on April, 22, 2022,  Brent wrote to Erus Energy, "Sorry for the short notice on canceling.  Due to non-payment for our services and a bunch of issues we have terminated providing our services going forward through Landfall."

156.   Then on April 27, 2022, Brent contacted Erus Energy again after making further disparaging remarks about Landfall while attempting to solicit Erus' business directly.

157.   On April 25, 2022, Landfall initiated a meeting with Datascore to resolve the matter.  At the meeting, Landfall presented an option where Datascore could reinstate access and partnership clients and Datascore could be paid while the parties worked out the financials with an independent accountant review.

---

[9] **Exhibit B**

158.    The next day, Brent sent an e-mail stating that DS Enterprises terminated any alleged contract.[10]

159.    On April 27, 2022, a large client of Landfall that had spent in excess of $800,000 in 2022 on the Software Platform, wrote Jason informing him of their desire to resume purchasing but wanted to hold a strategy session with Jason and Brent prior to.

160.    Based upon this request, Jason made numerous attempts to coordinate a meeting with Brent and this client to restore the relationship and prevent further damage to the Partnership, Landfall and the Client.

161.    On May 1, 2022, Brent wrote directly to this client that he was aware of their interest in continuing to work with Landfall using the Software Platform however Datascore has terminated their relationship and will never work with Landfall again.

162.    Brent went on to inform them that if they purchased Landfall's version of the Software Platform it is not the Datascore product purchased in January, February, March and April of 2022.  This was necessary to protect the Datascore Brand and prevent Confusion.

163.    Despite Brent's destructive conduct, Landfall continued to make attempts to resolve partnership interests and prevent further damage to Landfall, its clients and to the Partnership itself.

164.    On May 6, 2022, Brent e-mailed terms for a proposed agreement between Landfall and Datascore.[11]

165.    The proposed terms sought to alter the Partnership in several material ways.

166.    First, Brent sought to reduce the relationship with Landfall from a Partnership to a simple referral agreement.  Landfall would assign all contracts to Datascore, including for all new Partnership business, regardless if the client also was a legacy Landfall Client.

---

[10] See **Exhibit B**.

[11] *See* e-mail from Brent Biggs, dated May 6, 2022, Subject:  Agreement Day 2 (with attachment), attached as **Exhibit F**.

167.     Next, Brent sought to reduce Landfall's profit share from an equal stake to 25% of revenues, after subtracting expenses.

168.     Furthermore, Brent sought to strip Landfall from having any ownership, claims and/or rights to the assets that were developed by the Partnership between Landfall and Datascore.

169.     These proposed modification sought to

Finally, Brent conditioned providing any information required to resolve an outstanding issue with the vendor Brent had recommended Landfall contract with for the benefit of the Partnership, on executing the proposed referral agreement.

170.     May 6, 2022, a senior executive from Landfall's large client emailed Jason asking for an update on were things stood with Brent and the Software Platform as this delay is hurting their business.

171.     As described within, Brent/Datascore's conduct has forced Landfall to return tremendous sums of money belonging to the Partnership, and the Partnership has been held hostage as Datascore seeks to strongarm Landfall into signing away its Partnership as well as inflicted harm on the business of Landfall's clients and Landfall's reputation.

172.     On February 10, 2022, at 6:48pm (EST) Brent sent text messages to Jason exclaiming how profitable the Landfall/Datascore Partnership was shaping up to be:



173.     Next month, on March 16, 2022, at 10:30 p.m. (EST) at Brent, in a moment of reflection, messaged to Jason via text expressing his thanks for everything they achieved together.



174.    In connection with Datascore's separate dealings, Brent and Datascore used, and on information and belief, are still using, the Software Platform.

175.    In addition to allegations set forth within, Brent continues to improperly communicate with Partnership customers, including making inflammatory comments about Landfall and attempts to work directly with them outside of the Partnership.

176.    All conditions precedent to the institution and maintenance of this action have been satisfied or otherwise waived.

177.    Plaintiff retained the undersigned firm to bring this action and has agreed to pay a reasonable fee for its services.

## COUNT I

### BREACH OF CONTRACT
### against
### DATASCORE-AI, LLC

178.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

179.    On or about December 3, 2021, Landfall and Datascore entered into the Agreements constituting the Partnership Agreement.

180.     The parties agreed to operate as an association of two or more persons to carry out the business of the Partnership as co-owners of a business for profit and did not conduct business through a corporate entity;  therefore, a partnership was formed pursuant to Fla. Stat. §620.2802.

181.     Datascore breached the Partnership Agreement by, *inter alia*, (i) improperly cutting off access to the Software Platform from Landfall and Partnership clients;  (ii) and withholding access to partnership property, *to wit*, the Software Platform, in an effort to coerce Landfall into agreeing to modify the terms of the Partnership Agreement.

182.     As a result of Datascore's breach of Partnership Agreement, Landfall suffered damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff, Landfall demands judgment in its favor and against Datascore, in amout to be proven at trial, together with interest, costs of this action, and for all other relief to which Landfall is in entitled in law or equity.

## COUNT II

### VIOLATION OF FLORIDA REVISED UNIFORM PARTNERSHIP ACT
### against
### DATASCORE-AI, LLC

183.     Plaintiff incorporates and realleges the allegations  set forth in paragraphs 1 through 177, as if fully set forth herein.

184.     This is an action against Datascore for violation of the Florida Revised Uniform Partnership Act.

185.     Pursuant to Fla. Stat. § 620.8405, Florida Statutes, a "partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to: (a) [e]nforce such partner's rights under the partnership agreement; [and] (b) [e]nforce such partner's rights under this act...." § 620.8405, Fla. Stat.

186.     Landfall and Datascore were partners in Landfall/Datascore Partnership and, as such, the partners owed each other and the Partnership the duty of loyalty and the duty of care. See § 620.8404, Fla. Stat.

187.    The conduct of all of the Defendants alleged herein, including but not limited to, Datascore's

    a.  Deleting evidence on Telegram of all references to the Parties intent to form a jointly owned company to warehouse partnership assets

    b.  misappropriation and conversion of partnership property for its own use;

    c.  efforts to coerce force Landfall to waive its rights to partnership property;

    d.  cutting off access to the Software Platform, causing the Partnership and partnership clients to suffer damages; and

    e.  directly soliciting partnership clients; and

    f.  wrongfully usurping partnership opportunities that all of the partners regarding current and potential contractual relationships of the Partnership by wrongfully appropriating that opportunity for its own behalf and in denigration of other duties defendant had toward the Partnership and other partners.

188.    Each of the foregoing constitute breaches of Datascores' duty of loyalty and duty of care owed to Landfall and the Landfall/Datascore Partnership.

189.    Datascore failed to discharge the duties owed to Landfall and the Landfall/Datascore Partnership consistent with the obligation of good faith and fair dealing required by the Florida Revised Uniform Partnership Act.

190.    Datascore failed to exercise its rights under the Partnership Agreement consistent with the obligation of good faith and fair dealing required by the Florida Revised Uniform Partnership Act.

191.    Landfall has been aggrieved and damaged by Datascore's violation of its duties of loyalty and care, which have directly and proximately caused damage to Landfall.

192.    Where a partner breaches a fiduciary duty owed to the partners or Partnership (as alleged here), it is within the court's discretion to award attorneys' fees and costs to the partner

prosecuting the action. *See Larmoyeux v. Montgomery*, 963 So. 2d 813, 820 (Fla. 4th DCA 2007) (*citing Horne v. Aune*, 121 P. 3d 1227, 1236 (Wash. Ct. App. 2005) (noting that "when a partner breaches his fiduciary duties, a fee award is within the trial court's discretion")).

**WHEREFORE**, Landfall respectfully requests that this Court enter judgment against Datascore, and award Landfall compensatory damages, interest, and all such further relief that this Court deems equitable and just, including but not limited to, Landfall's reasonable attorneys' fees and costs.

## COUNT III

### ACCOUNTING
#### against
### DATASCORE

193.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

194.    Landfall and Datascore, shared a fiduciary relationship by virtue of the Partnership Agreement resulting in the Landfall/Datascore Partnership.

195.    Due to the actions (or inactions) of Datascore, the Partnership became a complex transaction due to, *inter alia*, Datascore's, erroneous accounting, mishandling, mismanagement and misuse of funds that belonged to the Partnership.

196.    A remedy at law is therefore inadequate because Landfall is not privy to information that would allow it to fully assess and calculate its damages.

197.    Additionally, Plaintiff cannot presently calculate the costs associated with Datascore's various breaches of fiduciary duty, as well as any cost incurred Datascore abuse of its position of trust and confidence with Plaintiff.

198.    A partnership accounting triggers the right to attorney's fees. *See Larmoyeux v. Montgomery*, 963 So. 2d 813, 821 (Fla. 4th DCA 2007) ("The general rule is that costs including attorney's fee will be allowed ... in cases of partnership accounting" (*quoting Lipsig v. Ramlawi*, 760 So. 2d 170 (Fla. 3d DCA 2000)).

**WHEREFORE**, Plainitff respectfully requests that this Court enter judgment in its favor and against Datascore, order an accounting of Datascore and , and enter all such further relief that this Court deems equitable and just, including but not limited to, BM's reasonable attorneys' fees and costs.

## COUNT IV

### DECLARATORY RELIEF UNDER FLA. STAT. §86.11.
#### against
### ALL DEFENDANTS

199.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

200.    This is an action in equity for a declaratory judgment pursuant to Fla.Stat. §86.11 et seq. and this Court has jurisdiction hereof.

201.    There is a controversy as to whether the Software Platform and related intellectual property assets, design specifications and technology, and provisional patents (collectively the "**Software Platform Assets**"), are property of the Landfall/Datascore Partnership.

202.    Plaintiff reasonably believes the assets are partnership property under relevant Florida law.

203.    Alternatively, Plaintiff reasonably believes the assets may rightfully be placed into a constructive trust to prevent unjust enrichment.

204.    Plaintiff is entitled to have the doubt removed because a justiciable controversy exists.

205.    Defendants may seek to claim ownership outside of the in different capacities; however, Defendants have not clearly articulated any quantum of ownership except for consistent command and control exercised over the software platform by Defendant, BRENT BIGGS.

206.    A judicial declaration of Plaintiff's and Defendants' rights and duties under the relevant agreements and conveyances is necessary and appropriate at this time for the reasons stated above, and to prevent future controversies between the parties.

207.     As a proximate result of Datascore's (i) withholding of access to the Software, and (ii) the destruction by Brent Biggs of critical partnership notes and communications, Plaintiff and the Partnership have been damaged.

**WHEREFORE**, Plaintiff, prays the Court enter judgment declaring that:

a.  the Landfall/Datascore Partnership is the rightful owner of the Software Platform Assets, or that Plaintiff has an interest in the an Software Platform Assets, either in law or equity, or that Plaintiff is the equitable beneficiary of a Constructive Trust, such trust to hold all right and title to the Software Platform Assets;

b.  any transfer of interest in the Software Platform Assets was an improper transfer of a partnership asset; and

c.  Defendants be enjoined from further assertion of rights under the Software Platform Assets and for such further relief as this Court may deem proper.

d.  For costs of suit incurred in this action; and

e.  Any relief deemed just and proper.

## COUNT V

### UNJUST ENRICHMENT
### against
### DATASCORE-AI, LLC

208.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

209.     Landfall conferred a benefit on Datascore by making significant capital contributions to the Pilot Program and the Landfall/Datascore Partnership, and contributing sweat equity to accomplish the full development and realization of the Software Platform Assets.

210.     Datascore voluntarily accepted and retained the benefits conferred by Landfall.

211.     Datascore voluntarily accepted and retained the benefits conferred by Landfall.

212. Datascore has been unjustly enriched at the expense of Landfall.

213. Landfall is entitled to damages as a result of Datascore's unjust enrichment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Datascore, awarding Landfall damages for unjust enrichment, and enter all such further relief that this Court deems equitable and just, including but not limited to, the imposition of constructive trust, injunctive relief, and Landfall's reasonable attorneys' fees and costs.

## COUNT VI

### EQUITABLE ESTOPPEL
### against
### DATASCORE-AI, LLC

214. Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

215. At all times relevant, Datascore represented (i) it was partners with Plaintiffs in the business marketing and selling the Software Platform (ii) the goal of the Partnership was to establish a jointly-owned company to take title to the Software Platform business assets; (iii) the goal of the Partnership was to sell the Software Platform entity for a significant profit; and (iv) Landfall and Datascore were 50/50 partners, splitting all assets and liabilities of the Partnership. All of these representation in were material to Landfall.

216. Later, after the product was complete, Datascore took the opposite position that there was no partnership or "verbal agreement" and removed Landfall's access to Platform and deleted all business assets from Telegram.

217. Landfall relied on the representations of Datascore, pivoting their entire business to fully market the Software Platform and taking all actions in furtherance of the Partnership Agreement, including, sharing all profits with Datascore.

218. Datascore knew or should have reasonably expected it promises to induce the actions of Plaintiff

219. Landfall changed their entire business to their detriment in reliance on the material

promises made by Datascore position to its detriment based on the representations made by Datascore insofar as Landfall has lost significant income, spent years of time and effort to development the Software Platform with Datascore, lost goodwill and Datascore abruptly shut off access to the software platform to coerce Landfall into waiving its ownership rights to the Software Platform.

**WHEREFORE**, Plaintiff prays as follows:

a.   For a declaration that Datascore is equitably estopped from denying the existence of the Landfall Datascore Partnership in the business marketing and selling the Software Platform and related assets;

b.   For a declaration that Datascore is equitably estopped from denying that the goal of the Partnership was to establish a jointly-owned company to take title to the Software Platform business assets;

c.   For a declaration that Datascore is equitably estopped from denying that Landfall is a 50% owner of the Software Platform

d.   For a declaration that Datascore is equitably estopped from denying access to the Software Platform from Landfall and other Partnership customers;

e.   For an award of attorney's fees and costs pursuant to any applicable law;

f.   For other relief this Court deems just and proper, including the imposition of a constructive trust and injunctive relief.

### COUNT VII

### QUANTUM MERUIT
### against
### DATASCORE-AI, LLC, BRENT BIGGS

220.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

221.    Throughout Landfall's business relationship Brent and Datascore, Landfall rendered services, performed labor, made significant capital contributions, indispensably contributed to the development of the Software Platform, provided access to clients and opportunity for the Software Platform to evolve into a viable product. Landfall performed in this

fashion first for and on behalf of Brent's prior company, and then for Datascore., with both Brent's and Datascore's knowledge.

222.   Based on the tacit and overt promises between Landfall and Datascore, inferred in whole or in part from Datascores' conduct, both Landfall and Datascore. understood and intended that Landfall would be compensated for the services it rendered, the labor it performed, the contributions towards the development of the Software Platform and related   business, and the capital contributions it made.

223.   The circumstances render Datascores' retention of the benefits inequitable and unjust, unless Datascores' shares ownership interest in the Software Platform, pays Landfall the value of Landfall's rendered services, performed labor, and significant capital contributions

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Datascore and Brent Biggs, awarding Plaintiff damages for quantum meruit, the imposition of a constructive trust on Software Platform Assets, injunctive relief, and enter all such further relief that this Court deems equitable and just, including but not limited to, Plaintiff's reasonable attorneys' fees and costs.

**COUNT VIII**

**TEMPORARY INJUNCTIVE RELIEF**
**against**
**DATASCORE**

224.   Plaintiff incorporates by reference paragraphs 1 through 177, inclusive, of this complaint as if fully set forth herein.

225.   The purpose of the temporary injunction is to preserve the status quo until the case is adjudicated on its merits.

226.   Prior to the actions referenced in this Complaint, the status quo was the Partnership Agreement between Landfall and Datascore to market and sell the jointly developed Software Platform to customers, with the Software Platform being available to conduct the partnership

business and both Landfall and Datascore splitting profits and losses equally.

227.    Plaintiff has a clear legal right to enforce its rights under Florida's Revised Uniform Partnership Act, or in equity for it reliance on material promises made by Defendant with respect to the Partnership.

228.    If Defendant Datascore is allowed to continue the tortious and wrongful acts described in this Verified Complaint, Plaintiff and the Partnership will suffer irreparable harm including but not limited to damage to the company reputation; damage to the reputation of the Partnership; damage to Plaintiff's credit rating; damage to and/or loss of present and/or prospective business relationships, including the relationships currently subject to interference by Defendants.

229.    The damages described in the preceding paragraph are difficult, if not impossible, to quantify.   Therefore, monetary damages alone cannot fully protect Plaintiff's rights, to the business interest and the intellectual property Datascore converted to its own use, whose value is yet to be determined.   Therefore, there is no adequate remedy at law.

230.    Based on the facts set forth in this Complaint, and in the accompanying affidavit.

231.    Plaintiff has a very strong probability of prevailing on the merits due to the overwhelming amount of evidence of the Partnership, despite efforts by Defendant to destroy evidence of the Partnership via the Telegram purge.

232.    A temporary injunction against BRENT BIGGS, DATASCORE, and DS ENTERPRISES will serve the public interest insofar as it will discourage similar egregious conduct like Defendants, who effectively stole partnership assets and attempted to use access to the Software Platform as a cudgel to rip off their partners and steal partnership business for themselves.

WHEREFORE, Plaintiff, respectfully requests this Court enter an order granting the following relief;

(a) Enjoining Defendant from acting contrary to the terms of the Partnership Agreement for a defined period;

31

(b) Enjoining Defendants from making any further communications with any officer, employee, representative or agent of the Contractual Relationships and Business Relationships;

(c) Enjoining Defendant from withholding access to the Software Platform, subject to the following conditions

    a. Landfall must pay to Datascore all amounts due and owing under the Partnership Agreement

## COUNT IX

**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**
**against**
**BRENT BIGGS and DATASCORE-AI, LLC**

233.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

234.    This is an action by Landfall, individually and on behalf of the Partnership against Brent Biggs for tortious interference with advantageous business relationships.

235.    Landfall has long-standing, existing advantageous business relationships with certain businesses both an individual, and as a partner of the Partnership, namely, National Funding, Inc. ( the "**Business Relationships**").

236.    Brent Biggs and Datascore have knowledge of Landfall's existing advantageous business relationships with such end users. Due to their position of trust and confidence with Plaintiff.

237.    Upon information and belief, Brent Biggs intentionally and unjustifiably interfered with Landfall's existing business relationships with the Business Relationships and has caused, or attempted to cause the Business Relationships to breach and/or cease their current relationship with Landfall and the Partnership by, among other things, contacting and attempting to solicit business away from Landfall and the Partnership.

238.    Brent Biggs's intentional and unjustified interference with Landfall's advantageous

business relationships with the Business Relationships was not privileged.

239.     Landfall and the Partnership have been damaged as a result of Brent Biggs's intentional and unjustified interference with Landfall's advantageous business relationships with the Business Relationships in an amount to be proven at trial.

**WHEREFORE**, Plaintiff, demands judgment in her favor and against Defendants, Brent Biggs, for damages, in an amount to be proven a trial, together with interest, costs of this action, and all other relief to which Landfall is entitled at law or in equity.

## COUNT X

### TORTIOUS INTEREFERENCE WITH CONTRACTUAL RELATIONSHIPS
### against
### BRENT BIGGS

240.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177, as if fully set forth herein.

241.     At all times relevant, Plaintiff had an ongoing business relationship with the following entities for itself and on behalf of the Partnership: (1) Genie Retail Energy, Inc., (2) IDT Energy; (3) Townsquare Energy LLC; (4) Ranchero Power, LLC; (5) Erus Energy LLC; (6) Shore Funding Solutions, Inc.; (7) Nationwide Financial; and (8) Residents Energy LLC, Independent Homes, CleanSky Energy, RRH Energy Services, LLC (collectively, the **"Contractual Relationships"**).

242.     At all times relevant, Defendant, BRENT BIGGS, had actual knowledge of these business relationships.

243.     Defendant BRENT BIGGS has intentionally induced, or has attempted to induce, the Contractual Relationships to terminate its business relationship with Plaintiff Landfall and/or the Partnership.

244.     Defendant BRENT BIGGS has no legal excuse or justification for his interference in the business relationship between the Contractual Relationships and Plaintiff, and/or the Partnership.     BRENT BIGG'S attempt to interfere with Plaintiff's relationships with the

33

Contractual Relationships was a clear and direct violation of BRENT BIGGS'S fiduciary duties to Plaintiff.

245.     As a direct result of Defendant's interference in Plaintiff's business relationship with the Contractual Relationships, Plaintiff and the Partnership has suffered and Plaintiff and the Partnership has suffered and will continue to suffer loss of earnings, and loss of business goodwill.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against BRENT BIGGS for damages in excess of Thirty Thousand Dollars ($30,000.00), all taxable costs and expenses incurred in this action, and such other relief as the Court deems just.

**COUNT XI**

**VICARIOUS LIABILITY**
**against**
**DATASCORE-AI, LLC**

246.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177 as though stated fully herein.

247.     This is an action against Defendant DATASCORE based on its vicarious liability for the acts of Defendant BRENT BIGGS, with damages exceeding $30,000.00, exclusive of attorneys' fees, costs, and interest.

248.     At some time prior to the date of the incident that is the basis of this action, Defendant DATASCORE and BRENT BIGGS entered into an agreement by which Defendant DATASCORE appointed BRENT BIGGS as Defendant's agent.

249.     BRENT BIGGS accepted the appointment and immediately began performing the duties as DATASCORE's agent.

250.     At all times herein mentioned, BRENT BIGGS was employed by and was held out by the Defendant DATASCORE as an agent of DATASCORE, pursuant to express authority or authority implied from the nature and circumstances of the employment of BRENT BIGGS, as hereinafter alleged.

251.     BRENT BIGGS, while acting within the course and scope of the agency alleged

above and at the direction of Defendant, engaged in tortious and fraudulent conduct including, but not limited to tortious interference with contractual relationships

252.     At all times material to this cause of action, Defendant BRENT BIGGS was an agent of DATASCORE and was at all times, acting within the full course, scope and authority of the position with Defendant, DATASCORE, therefore, imputing liability for the negligent acts and resulting damages as outlined above under the principles of respondent superior, the law of agency and/or the Law of Florida applicable to professional associations.

253.     As a result of the tortious conduct of BRENT BIGGS as alleged above, Plaintiff was injured as follows:  As a direct and proximate result of BRENT BIGGS's tortious conduct, described above, Plaintiff suffered damages in the form of lost revenue and lost goodwill.  The damages are ongoing.

**WHEREFORE**, Plaintiff requests judgment against Defendant for damages, together with attorney's fees, costs of suit, and such other and further relief as the Court may deem proper

### COUNT XII

### VICARIOUS LIABILITY
### against
### DATASCORE ENTERPRISES, INC.

254.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177 as though stated fully herein.

255.     This is an action against Defendant DS ENTERPRISES based on its vicarious liability for the acts of Defendant BRENT BIGGS, with damages exceeding $30,000.00, exclusive of attorneys' fees, costs, and interest.

256.     At some time prior to the date of the incident that is the basis of this action, Defendant DS ENTERPRISES and BRENT BIGGS entered into an agreement by which Defendant DS ENTERPRISES appointed BRENT BIGGS as Defendant's agent.

257.     BRENT BIGGS accepted the appointment and immediately began performing the duties as DS ENTERPRISES's agent.

258.    At all times herein mentioned, BRENT BIGGS was employed by and was held out by the Defendant DS ENTERPRISES as an agent of DS ENTERPRISES, pursuant to express authority or authority implied from the nature and circumstances of the employment of BRENT BIGGS, as hereinafter alleged.

259.    BRENT BIGGS, while acting within the course and scope of the agency alleged above and at the direction of Defendant DS ENTERPRISES, engaged in tortious and fraudulent conduct including, but not limited to tortious interference with contractual relationships

260.    At all times material to this cause of action, Defendant BRENT BIGGS was an agent of DS ENTERPRISES and was at all times, acting within the full course, scope and authority of the position with Defendant, DS ENTERPRISES, therefore, imputing liability for the negligent acts and resulting damages as outlined above under the principles of respondent superior, the law of agency and/or the Law of Florida applicable to professional associations.

261.    As a result of the tortious conduct of BRENT BIGGS as alleged above, Plaintiff was injured as follows:  As a direct and proximate result of BRENT BIGGS's tortious conduct, described above, Plaintiff suffered damages in the form of lost revenue and lost goodwill.  The damages are ongoing.

**WHEREFORE**, Plaintiff requests judgment against Defendant for damages, together with attorney's fees, costs of suit, and such other and further relief as the Court may deem proper

### COUNT XIII

### ALTER EGO
#### against
### DATASCORE-AI, LLC, DATASCORE ENTERPRISES, INC., and BRENT BIGGS

262.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 177 as though stated fully herein.

263.    At all times material to the Complaint, Datascore and DS Enterprises were mere instrumentalities of Defendant Brent Biggs.

264.    Brent created Datascore, who entered into the Partnership Agreement with Plaintiff.

265.    Datascore, who was formed in Texas, violates Texas law.  Datascore, Brent, or an agent thereof, formed Datascore, along with 5 Beeehive, Inc. with the intent to obfuscate Brent's ownership interest in the companies.

266.    DS Enterprises was formed in Delaware and is under the command and control of Brent Biggs.

267.    On April 26, 2022.  Brent, in his role as an officer of DS Enterprises, used DS enterprise for the improper purpose of attempting to terminate the Partnership Agreement between Landfall and Datascore.

268.    In practice, Brent does not differentiate Datascore from DS Enterprises in any of his e-maill communications or business dealings.

269.    Brent dominates and controls both DS Enterprises and Datascore to such an extent that the companies' independent existence, has become, in fact non-existent

270.    Upon information and belief, Brent, as officer and owner of the companies, manages and dominates these entities to such an extent Brent, Datascore, and DS Enterprises are in fact alter egos of each other.  Brent maintains control or has final say over all aspects of the companies.

271.    Brent has been using DS Enterprises to improperly compete with the Landfall/Datascore Partnership, of which Datascore is a member.

272.    Brent's improper use of the corporate forms has caused injury to Plaintiffs and the Partnership through, *inter alia*, lost income, misappropriated or converted intellectual Property.

**WHEREFORE**, Plaintiff respectfully requests that this Court should enter judgment that (i) enter judgment that Brent Biggs is the alter ego of Datascore, and DS Enterprises and, as such, is jointly and severally liable for any and all damages caused by Datascore, and DS Enterprises as set forth in this Verified Complaint; (ii) Datascore, and DS Enterprises are the mere instrumentality or alter ego of Brent Biggs.  that they are liable, jointly and severally, for damages in an amount to be proven at trial, including reasonable attorney's fees and costs, and any such further relief this Court deems mete and just.

## DEMAND FOR JURY TRIAL

273.    Plaintiff demands a jury trial on any issues so triable.


Respectfully submitted

APONTE LAW, P.A.
18301 NW 2ND COURT
MIAMI, FL 33169
T:   (305) 356-1032

BY:   _____
        DARREN R. APONTE, ESQ.
        FLORIDA BAR NO. 83597